Petitioner Billy Wayne Waldrop was found guilty on February 18, 1983, of the murder of Thurman Macon Donahoo under §13A-5-40(a)(2) and § 13A-5-40(a)(4), Code of Alabama 1975. The trial court, in accordance with the jury's recommendation, sentenced petitioner to the death penalty. On direct appeal, this Court affirmed petitioner's conviction in Waldrop v.State, 459 So.2d 953 (Ala.Cr.App. 1983). The Alabama Supreme Court affirmed this Court in Ex parte Waldrop,459 So.2d 959 (Ala. 1984). The United States Supreme Court *Page 477 
denied certiorari in Waldrop v. Alabama,471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).
Thereafter, Waldrop filed the instant petition for writ of error coram nobis, which was denied by the trial court. From this denial petitioner now appeals.
 I
Petitioner contends that his trial counsel and appellate counsel were ineffective. Petitioner reasserts each of the grounds raised in his original petition at "Claim I." He alleges principally that counsel failed to conduct a reasonable investigation in order to present mitigating evidence and that counsel failed to file certain pretrial motions, thereby resulting in ineffective assistance of counsel.
The United States Supreme Court in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 50 L.Ed.2d 674
(1984), set forth in a two-part test for reviewing ineffective assistance of counsel claims:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland, 466 U.S. at 687,104 S.Ct. at 2064. This test has been repeatedly followed by this court. See Williams v. State, 489 So.2d 4
(Ala.Cr.App. 1986); Bell v. State,489 So.2d 667 (Ala.Cr.App. 1986); Jackson v.State, 485 So.2d 797 (Ala.Cr.App. 1986).
We must first determine, therefore, whether the petitioner has proven that the performance of counsel was deficient. Each of the allegations of ineffectiveness raised by appellant were addressed in a very thorough memorandum opinion issued by the trial court, Judge William C. Sullivan presiding.[1] We adopt the trial court's findings with regard to "Claim I" and find that the petitioner has failed to prove that the performance of counsel was deficient.
 II
Petitioner contends next that the admission into evidence of his confession was error and that his counsel was ineffective for allowing such admission to occur.
As noted by the trial court the issue of the admission of petitioner's confession was raised on original appeal in Waldrop v. State, supra. Although coram nobis does not lie to relitigate issues decided on direct appeal, Ex parteRudolph, 276 Ala. 392, 162 So.2d 486, cert. denied, Rudolph v. Alabama, 377 U.S. 919,84 S.Ct. 1185, 12 L.Ed.2d 188 (1964); Richardsonv. State, 419 So.2d 289 (Ala.Cr.App. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262,75 L.Ed.2d 488 (1983); Summers v. State,366 So.2d 336 (Ala.Cr.App. 1978), cert. denied,366 So.2d 346 (Ala. 1979), we believe it is appropriate for this court to address petitioner's argument that the confession would not have been admitted but for the ineffectiveness of petitioner's counsel.
Petitioner contends that counsel was ineffective for failing to make a pretrial motion to suppress the confession. We note that although no pretrial motion was made, a suppression hearing was held before petitioner's confession was admitted. The Supreme Court has held that a defendant is entitled "at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." Jackson v. Denno, *Page 478 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We are convinced that the suppression hearing held at trial, prior to the admission of the confession in this case, afforded petitioner every advantage that a pretrial hearing could have afforded. We note, also, that the trial court stated that it was standard practice in that circuit to conduct suppression hearings during trial. We, therefore, find that deficient performance did not result from the failure of counsel to request a pretrial suppression hearing.
Petitioner contends that his confession was due to be suppressed if his counsel had argued for suppression on "Fourth, Fifth, Sixth andFourteenth Amendment grounds."
In support of his Fourth and Fourteenth Amendment claims petitioner contends apparently that he should have been afforded a post-arrest hearing to determine if there was probable cause to detain him and that his pretrial detention was, therefore, excessive. In Baker v. McCollan,443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), it was held that "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Petitioner was arrested pursuant to a warrant issued after a showing of probable cause. For this reason petitioner's argument based on this ground must fail.
Petitioner contends that pre-indictment questioning by the police gave rise to aSixth Amendment violation. Petitioner confessed on October 18, 1982, and was indicted on December 17, 1982. TheSixth Amendment right to counsel attaches only at the time adversary proceedings are initiated.Caver v. Alabama, 577 F.2d 1188 (5th Cir. 1978); Moran v. Burbine, 475 U.S. 412,106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In this state a felony prosecution begins with an indictment.State ex rel. Baxley v. Strawbridge,52 Ala. App. 685, 296 So.2d 779, cert. denied, 292 Ala. 506, 296 So.2d 784 (1974). Petitioner'sSixth Amendment right to counsel had not attached at the time he confessed.
We find no basis for petitioner's contention that his confession should have been suppressed onFifth Amendment grounds. The trial court found at trial and at the coram nobis hearing that petitioner elected not to assert his right to counsel. We, therefore, find no merit to any of the arguments petitioner contends should have caused the suppression of his confession. Accordingly, we find that petitioner's counsel was not deficient for failure to assert these arguments for suppression.
 III
Petitioner contends that his counsel was ineffective for failing to challenge the death qualification of the jury at trial.
The trial court found that two jurors were excluded for cause because neither could impose capital punishment in any case, no matter what the evidence. A prospective juror may be excluded for cause if his views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v.Witt, 469 U.S. 412, 105 S.Ct. 844,83 L.Ed.2d 841 (1985). The prospective jurors were, therefore, properly excluded. Furthermore, in Lockhart v.McCree, 476 U.S. 162, 106 S.Ct. 1758,90 L.Ed.2d 137 (1986), it was held that this process is not violative of a defendant's right to an impartial jury or his right to a jury chosen from a fair cross-section of the community.
Accordingly, we find that petitioner's counsel was not ineffective for failing to raise this issue at trial, as the issue is without merit.
 IV
Finally, petitioner contends that his counsel was ineffective for not contending that the application of the Alabama death penalty is discriminatory against defendants accused of killing whites. *Page 479 
In Waldrop v. State, 459 So.2d 953
(Ala.Cr.App. 1983), the findings of the trial court were set forth as an appendix. The trial court stated:
 "The Court further finds that the sentence of death was not recommended by the jury under influence of passion, prejudice, or any arbitrary factor. The Court finds that both the defendant and the victim were male caucasians. The Court further taking judicial knowledge of the proceedings conducted before it finds that the composition of the jury trying the defendant in this case was as follows: five white males, three white females, two black males, two black females."
Waldrop, supra, at 957-58.
Because the trial court found that the recommendation of the death sentence by the jury was not imposed "under influence of passion, prejudice or any arbitrary factor" and because petitioner now presents nothing to indicate that this finding was not correct, we now find that petitioner's contention that the imposition of the death penalty on him was discriminatory is without merit. We further find that the petitioner's counsel was not ineffective for failing to raise this issue.
The decision of the trial court denying the petition for writ of error coram nobis is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] The memorandum opinion of the Circuit Court of Talladega County, Judge William C. Sullivan presiding, is set forth in full as an appendix to this opinion.
 APPENDIX IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA No. CC-85-160 MEMORANDUM OPINION AND FINAL JUDGMENT
The Court having heard and considered all of the evidence makes the findings of fact and conclusions of law set out below and enters final judgment denying petitioner relief.
 CLAIM ONE: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
An evidentiary hearing was held on petitioner's ineffective assistance of counsel claims. At the hearing, petitioner was represented by counsel and presented evidence. The Court, after hearing all the testimony and observing the demeanor of the witnesses, makes the findings set out below.
 A. Legal Standard for Deciding Ineffective Assistance Claims
The legal test to be used in determining ineffective assistance of counsel claims is set out in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). Ex Parte Daniel, 459 So.2d 948, 951 (Ala. 1984); see, Ex Parte Baldwin, 456 So.2d 129, 134 (Ala. 1984). In Strickland v. Washington, supra, the United States Supreme Court provided an authoritative statement of the law on ineffective assistance of counsel claims. The Court stated that the fundamental matter for decision on any claim of ineffective assistance must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Court then held that there are two components to an ineffective assistance of counsel claim:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
104 S.Ct. at 2064.
As to the first component of an ineffective assistance of counsel claim, the Court *Page 480 
held that the standard for measuring attorney performance is an objective one, "reasonableness under prevailing professional norms." 104 S.Ct. at 2064-2065. Because the purpose of theSixth Amendment is to insure that a defendant receives a fair trial, the Court said "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 104 S.Ct. at 2065. In announcing this standard, the Court rejected an approach which would entail intensive or intrusive after-the-fact inquiry concerning an attorney's performance, and it rejected establishing rigid requirements or detailed guidelines for attorney performance.
For these and other reasons, the Court held that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134
[102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Michel v. New York, supra, 350 U.S. [91] at 101 [76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpastor, the Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
104 S.Ct. at 2065-2066 (emphasis added).
After a petitioner has identified the specific acts or omissions which he alleges were not the result of reasonable professional judgment, the court must determine whether those acts are "outside the wide range of professionally competent assistance." 104 S.Ct. at 2066. In making that determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."104 S.Ct. at 2066.
In addition, the Court said that an attorney's strategic choices, made after reasonable investigation, are virtually beyond challenge and that whether an attorney's strategic choices were reasonable may be determined, or substantially influenced, by what he was told by a defendant.104 S.Ct. at 2066-2067.
Even if a defendant can show that his attorney's performance was deficient, his conviction or sentence will not be set aside absent his affirmatively proving prejudice. A defendant must prove prejudice because any given error is as likely to have been harmless as it is to have been harmful. 104 S.Ct. at 2068. A defendant must do more than "show that the errors had some conceivable effect on the outcome of the proceeding."104 S.Ct. at 2068. In order to prove that he was prejudiced by his attorney's deficient performance:
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
104 S.Ct. at 2068. More specifically, the Court held:
 When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *Page 481 
When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
104 S.Ct. at 2069. The totality of evidence must be considered in determining whether defendant was prejudiced.
Two other United States Supreme Court decisions are pertinent to petitioner's claim that trial counsel was ineffective. The first is United States v. Cronic, 466 U.S. 648,104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In Cronic, the Court held:
 The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred. . . .
104 S.Ct. at 2045 (footnote omitted) (emphasis added). TheCronic decision also held that: "[b]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs . . . the burden rests on the accusedto demonstrate a constitutional violation."104 S.Ct. at 2046 (footnote omitted) (emphasis added).
The second pertinent decision is Engle v. Isaac,456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), in which the Court held:
 Each trial permits a myriad of possible claims. Counsel might have overlooked or chosen to omit respondent's due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . .
456 U.S. at 134, 102 S.Ct. at 1575 (emphasis added).
These cases provide the framework for analyzing petitioner's ineffective assistance of counsel claims. Hank Fannin and R.D. Pitt's representation of petitioner was not deficient and petitioner was not prejudiced by his actions at trial.
 B. Facts Concerning Representation as a Whole
The following are facts concerning Fannin and Pitt's representation as a whole:
(1) Petitioner Waldrop was represented at trial by Hank Fannin and R.D. Pitts, two experienced and capable criminal defense attorneys. Fannin was appointed to represent petitioner and Pitts was appointed as co-counsel. At the time of petitioner's trial, some 25 percent of Fannin's practice was criminal defense work. Fannin had tried approximately 50 felony jury trials and was a prosecutor early in his practice. While he had not been practicing as long as Fannin, Pitts practice was 60 to 75 percent criminal defense work at the time of petitioner's trial. Both are, and were at the time of petitioner's trial, experienced and competent defense attorneys.
(2) In preparation for petitioner's trial, Fannin and Pitts met with petitioner about twelve times. Each of these meetings lasted about an hour. During these meetings trial counsel discussed the facts of the case and attempted to develop a defense strategy. Petitioner related to them a version of the robbery/murder of Macon Donahoo that mirrored petitioner's confessions. Trial counsel discussed possible defenses that petitioner could utilize and finally settled on the use of an alibi defense. Petitioner's only alibi witness was his then common-law wife, Doris Thomas. Petitioner did not want Fannin and Pitts to call Doris Thomas as a witness, but she was his only alibi witness. Petitioner was adamant about not involving any of his family in the trial.
(3) During Fannin and Pitts preparation for trial, they attempted to prepare petitioner for what was ahead, including trial procedures and the fact that there would be a sentencing hearing. Petitioner was always quiet about his background and life *Page 482 
history. Petitioner never told his attorneys about any of the alleged physical and sexual abuse he has now claimed that he suffered as a child. Petitioner did tell Fannin and Pitts about being shot in the head and he told them he shot himself in the stomach. Acting on this information, Fannin contacted Dr. Evan Zeiger, the neurosurgeon who treated petitioner for his head wound. After investigating the injury and being informed that petitioner suffered no long-term problems because of it, Fannin decided not to call Zeiger as a witness at petitioner's trial.
(4) Petitioner never informed Fannin or Pitts about any addiction or substance abuse problems he had experienced. Petitioner never related any problems he experienced from taking his prescribed medication or any negative effects of drug interaction.
(5) Fannin and Pitts talked with petitioner's mother, Francis Schock and other members of petitioner's family. The family members did not provide any details of petitioner's personal habits or his background. Pitts testified that at no time did any member of petitioner's family tell them anything about petitioner's background or life that could be used to engender any sympathy for petitioner. At the sentencing stage of the trial, Fannin and Pitts did not call any family members to testify for petitioner for three reasons: Petitioner had been very clear in his demand that his family not be involved in his trial; based on what they had seen and heard from petitioner's family, there was nothing that they could testify to that would have served as mitigation in petitioner's case; and petitioner had informed Fannin and Pitts that he did not want life without parole, but would rather be sentenced to die in the electric chair.
(6) When petitioner told Fannin and Pitts not to plead with the jury for life without parole, it severely limited what they could do to represent petitioner at the sentencing phase of his trial. Fannin and Pitts told petitioner that they could not ask the jury to return a death sentence. Additionally, Fannin and Pitts could not put petitioner on the stand because it would have allowed the prosecution to go into the details of petitioner's prior double-murder conviction. They discussed this at length with petitioner and petitioner did not want to testify. Also, Fannin and Pitts had to be concerned that if petitioner testified, he might tell the jury that he preferred death to life without parole.
(7) Petitioner never appeared to be suffering from any type of mental disease or defect. Petitioner, to Pitts, seemed to resent the implication that he might have a mental problem. Fannin and Pitts never had any difficulty communicating with petitioner and they discussed the various stages through which his trial would proceed. Fannin and Pitts explained mitigation to petitioner from both the statutory language and in layman's terms.
(8) In preparation for trial, Fannin and Pitts interviewed prosecution witnesses, both police officers and non-law enforcement witnesses. Fannin and Pitts had access to the District Attorney's files and knew of all the pre-trial statements that petitioner had made to the police. Fannin and Pitts filed several pre-trial motions, including a motion for change of venue and a motion to determine competency.
(9) The trial transcript and the testimony at the coram nobis hearing established that Fannin and Pitts conducted a competent and professional defense. After conducting a thorough pre-trial investigation they presented a defense, alibi, and vigorously challenged the admission of petitioner's confession and other harmful evidence. While petitioner's coram nobis counsel challenged their efforts to contact petitioner's family, Fannin and Pitts, despite petitioner's objections, spoke with his family. Based on their conversations with petitioner and his family they were not able to discover anything that might have aroused jury sympathy for petitioner. Fannin and Pitts did not shirk their responsibility to petitioner and did not render ineffective assistance.
 C. Alleged Failure to Present Mitigating Evidence
In paragraph 17 of his petition, petitioner claims that his trial counsel were ineffective *Page 483 
because they did not call members of his family as witnesses to elicit allegedly mitigating evidence, during the punishment stage of his trial. More specifically, petitioner's trial counsel were alleged to be ineffective for failure to investigate and present evidence of petitioner's violent and chaotic home life as a child; alleged physical and sexual abuse of petitioner as a child; alleged neurological damage as a result of a gunshot wound; alleged behavioral problems resulting from petitioner's sporadic taking of an anti-seizure medication, petitioner's drug and alcohol abuse, and petitioner's alleged severe depression resulting in alleged suicide attempts. In support of this claim, petitioner presented his own testimony and that of Francis Schock, Judy Gay, Charles White, Jackie Scott, and the depositions of Dr. Norman Poythress, Timothy Thomas and Cordell Smith. Respondent relied upon the cross-examination of petitioner's witnesses and the testimony of Doris Thomas, Charlsie Allen, Hank Fannin, R.D. Pitts as well as the depositions of Dr. Evan Zeiger, Dr. Thomas Boll, Danny Waldrop and Emmett Waldrop. As to these specific claims, the Court finds as follows:
 1. Childhood Trauma
(a) The first alleged mitigating circumstance was that, when petitioner was a child, he endured a violent and chaotic childhood and was physically and sexually abused by his father, uncle and half-sister. Petitioner's evidence never established that these events occurred as petitioner's evidence was both self-contradictory and not credible. In addition, this evidence was contradicted by the testimony of petitioner's father, his brother, his half-sister and his former common-law wife. Even if these events occurred, petitioner did not establish that he suffered any long or short term ill effects from his alleged abuse.
(b) Petitioner alleged that he was physically and sexually abused by his father Emmett Waldrop. Emmett Waldrop's deposition clearly contradicts petitioner's testimony, and that of petitioner's mother, Frances Schock. Emmett Waldrop testified that before the coram nobis hearing Francis Schock told him she would tell anything to get petitioner off death row. After hearing all the testimony and observing the demeanor of the witnesses, the Court finds that petitioner's own testimony was not credible. No other witness' testimony supported petitioner's allegation that he was sexually abused by Emmett Waldrop. The family members that testified on behalf of petitioner had no personal knowledge that petitioner was ever sexually abused as a child. Any knowledge they had gained was from either petitioner or his mother, who learned what she knew from petitioner. Petitioner's former common-law wife testified that Waldrop never told her that he was abused by his father. The Court finds that petitioner was not sexually abused by Emmett Waldrop.
(c) Petitioner alleged that he was sexually assaulted by his uncle, Charles Stevenson. No other witness had any personal knowledge of any sexual abuse petitioner allegedly suffered. Petitioner's witnesses' knowledge of the alleged sexual abuse was based on hearsay and speculation and the testimony about the alleged abuse was not credible. Petitioner's half-brother, Charles White, testified on cross-examination that he was close friends with his uncle and his uncle never attempted to sexually molest him or any other child in the family. Petitioner's former common-law wife, Doris Thomas, testified that petitioner never told her that he had been abused by his uncle. Petitioner's own testimony was not credible and the Court finds that petitioner was not sexually abused by Charles Stevenson.
(d) Petitioner alleged that he was sexually assaulted by his half-sister, Charlsie Allen, as a child. Charlsie Allen testified that she never sexually abused petitioner or any other child. Petitioner's other witnesses testified without any personal knowledge of any alleged sexual abuse of petitioner by his half-sister. In addition, Doris Thomas testified that petitioner had vowed to "get even" with his half-sister because she had turned him in to the police following petitioner's prior double murder. The deposition of petitioner's next younger brother, Danny Waldrop, contains testimony that Charlsie Allen treated the children well and *Page 484 
did not abuse them. Additionally, Danny Waldrop never saw or heard of Charlsie Allen sexually abusing petitioner and does not believe that she did. Even petitioner's half-brother, Charles White, who testified for petitioner, stated that he had no knowledge of alleged sexual abuse by Charlsie Allen and never heard anything about it until August, 1985, and then it was from petitioner's mother, Francis Schock. After hearing all the testimony, weighing the various interests of the witnesses and observing the witnesses' demeanor, the Court finds that petitioner's own testimony and that testimony of this mother, brother and sisters in support of his claim, is not credible. The Court further finds that the testimony of Charlsie Allen, Danny Waldrop and, in pertinent part, Charles White is credible. The Court finds that petitioner was not sexually abused by Charlsie Allen.
(e) The testimony petitioner presented to support his claims came from various members of his family as well as himself. Each of petitioner's witnesses testified as they would have testified at petitioner's trial. Each also testified that they thought petitioner was innocent and that it would be a tragedy if he were executed. Each of petitioner's witnesses displayed a strong bias in favor of petitioner.
(f) In preparation for trial, and during trial, Fannin and Pitts talked with petitioner. At no time did petitioner tell them about any of the abuse he allegedly suffered. Other family members talked with Fannin and Pitts and they never told them about any abuse petitioner allegedly suffered. Neither petitioner nor any of his family provided Fannin and Pitts with any possible mitigation arising from any type of abuse, even when mitigation was explained to them.
(g) Fannin and Pitts were not ineffective for failing to present the allegedly mitigating evidence. Petitioner has not shown that their performance was deficient since trial counsel, despite their efforts, were not informed of this evidence by petitioner or his family. As noted above, the United States Supreme Court has recognized that the reasonableness of a lawyer's decisions may depend on what his client tells him.Strickland v. Washington, supra,104 S.Ct. at 2066-2067. Further, petitioner has failed to show that he was prejudiced by the absence of this allegedly mitigating evidence since it consists only of unsubstantiated self-serving statements that are squarely contradicted by credible witnesses.
 2. Petitioner's alleged neurological damage:
(a) The second mitigating circumstance that petitioner claimed trial counsel should have presented, was the alleged neurological damage he suffered as the result of a gunshot wound in November 1981, and the effects of that damage on petitioner's behavior.
(b) Petitioner was shot in the head on or about November 28, 1981. He was treated initially at Northeast Alabama Regional Medical Center in Anniston and then transferred to University Hospital in Birmingham. He was treated by Dr. Evan Zeiger, a neurosurgeon, and within a short period of time, left University Hospital.
(c) Petitioner alleged that his trial counsel should have presented to the jury the evidence of his neurological damage and the effects of that damage on his subsequent behavior. The depositions of Dr. Zeiger and Dr. Thomas Boll show that petitioner had improved to a normal state when he left the hospital and he had an excellent prognosis for recovery. Dr. Zeiger, the neurosurgeon who operated on petitioner said that after a follow-up examination in February, 1982 he determined that there was no evidence that petitioner suffered from any seizure activity. The injury to petitioner's right frontal lobe, a "silent portion of the brain," would not cause any kind of "rage attack seizure" according to Dr. Zeiger. Dr. Boll, a neuropsychologist who examined and administered tests to petitioner, said petitioner's injury would not and has not impaired his ability to appreciate the criminality of his conduct or have any effect on his ability to conform his conduct to the requirements of the law. Even if petitioner had experienced seizures, *Page 485 
Dr. Boll testified that complex human actions, such as petitioner's offense, do not occur during seizures just as someone does not complete a sequential set of actions during a seizure.
(d) Petitioner's testimony and that of his mother, Francis Schock, two of his sisters, Judy Gay and Jackie Scott and half-brother Charles White, recounted various actions of petitioner which allegedly showed that petitioner experienced some change in behavior due to his injury, which they attributed to a seizure episode. The details of their testimony conflicted with one another and were contradicted not only by the testimony of Drs. Zeiger and Boll but also by the testimony of petitioner's former common-law wife, Doris Thomas. In addition, Thomas testified that petitioner never had a seizure but was frequently drunk or hung-over. There was no credible testimony presented that petitioner's head injury in any way contributed to petitioner's subsequent allegedly aberrant behavior.
(e) Petitioner testified that he told Fannin about being shot in the head. Fannin testified that he talked with Dr. Zeiger prior to trial and when he learned that Zeiger's testimony would not excuse petitioner's conduct in any way, he decided not to call Zeiger as a witness. Fannin made a tactical decision not to present evidence of petitioner's head injury.
(f) While petitioner's evidence established that he did in fact suffer an injury to his head, petitioner wholly failed to establish that this injury would have any long or short-term effects. The testimony of Drs. Zeiger and Boll were not contradicted by petitioner's evidence, but the medical testimony clearly contradicts the testimony of petitioner and his witnesses. This evidence, when viewed as a whole, fails to constitute mitigation. Fannin knew of the injury and contacted Zeiger in an attempt to gain some evidence favorable to petitioner's case, but when he realized what Zeiger would testify about he made a tactical decision not to call him as a witness. This tactical decision did not make his performance deficient. Further, since Dr. Zeiger was known to both the defense and the prosecution at the time of trial, petitioner was not prejudiced by Fannin's decision. Petitioner or his family's testimony about his head wound would have been overwhelmingly contradicted by Dr. Zeiger's testimony.
(g) The third mitigating circumstance that petitioner alleged trial counsel should have presented was the effect petitioner's sporadic intake of his anti-seizure medication along with his substance abuse would have on his behavior. Petitioner presented no evidence to support this claim, other than testimony that petitioner regularly abused various drugs and alcohol. Petitioner never told Fannin and Pitts that he abused any drugs or had abused alcohol. Indeed, petitioner, as he testified at the coram nobis hearing, did not think this was any of their business. No member of petitioner's family ever told Fannin and Pitts of petitioner's substance abuse. In any event, the voluntary substance abuse that petitioner and his family testified about was not mitigating evidence in petitioner's case. There was no evidence presented that petitioner's sporadic taking of his anti-seizure medication, Dilantin, mixing it with other drugs and alcohol would cause petitioner to feel any "negative effects." Such testimony does not constitute mitigation as there was no evidence, that any substance abuse contributed to or excused petitioner's actions in the robbery/murder of Macon Donahoo. Fannin and Pitts avoided presenting harmful evidence to the jury that petitioner was a drug addict and an alcoholic.
(h) The fourth mitigating circumstance that petitioner alleged trial counsel should have presented was petitioner's severe depression at or around the time of the robbery/murder of Macon Donahoo and petitioner's alleged suicide attempts. Petitioner testified that in 1981 he was depressed and shot himself in an attempt to commit suicide. Petitioner was in fact shot in the stomach with a .22 caliber pistol on August 1, 1981. The court finds petitioner's testimony that he shot himself in the stomach with a .22 caliber pistol in an attempt to commit suicide is not credible. Further, petitioner's evidence does not support any claim that his depression in any way would *Page 486 
excuse his conduct in the brutal robbery/murder of Thurman Macon Donahoo. This evidence, even if credible, would not constitute mitigation.
(i) Petitioner's witnesses each testified as they would have testified at petitioner's trial as to this claim. Each also testified that they thought petitioner was innocent and that it would be a tragedy if petitioner were executed. Each of petitioner's witnesses displayed a strong bias in favor of petitioner.
(j) The testimony Respondent submitted of Doris Thomas, Emmett Waldrop, Danny Waldrop and Charlsie Allen clearly contradicted the testimony of petitioner's witnesses. The evidence presented at the coram nobis hearing consisted of various family members that evidenced a strong bias in favor of petitioner testifying for petitioner, while other family members testified against petitioner and his claims. This Court views the testimony of Doris Thomas, Emmett Waldrop, Danny Waldrop and Charlsie Allen as more credible and believable, based on this Court's observation of their demeanor and interests, than the testimony of petitioner's witnesses. The testimony of Doris Thomas, in particular, was against her penal interests, in light of her testimony at petitioner's trial in support of the alibi defense.
(k) Further, both Fannin and Pitts testified that petitioner told them that he didn't want life without parole, he wanted the electric chair. Petitioner told Fannin and Pitts that he did not want his family involved in the trial. Petitioner never told Fannin and Pitts about his alleged physical and sexual abuse. In fact by his own testimony, he never told anyone about these incidents until his release from prison when he served time for his prior double-murder. Pitts testified that he was present when petitioner's mother berated him for what he had done, that petitioner had ruined her name and he was going to get what he deserved. Faced with petitioner's demands and their knowledge of petitioner's family attitude toward petitioner, Fannin and Pitts could not reasonably be expected to call witnesses that they believed would give testimony harmful to petitioner and who had not shown that they could give helpful testimony. Fannin and Pitts' representation of petitioner was not deficient simply because petitioner's current counsel developed some arguably mitigating evidence not presented by trial counsel where Fannin and Pitts made a reasonable effort to discover such evidence. Burger v. Kemp,753 F.2d 930, 938-939 (11th Cir. 1985).
(l) Petitioner has not presented evidence which shows Fannin and Pitts' representation of him to have been deficient. The testimony at the coram nobis hearing showed that Fannin and Pitts were capable and experienced trial attorneys who exerted themselves greatly on petitioner's behalf. The mere failure to present mitigating evidence, after conducting a reasonable investigation, does not render an attorney's performance deficient. Darden v. Wainwright, 477 U.S. 168, 185,106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986). Trial counsel has no absolute duty to present mitigating evidence. Mitchellv. Kemp, 762 F.2d 886, 889 (11th Cir. 1985). Trial counsel is not obligated to present all conceivable mitigating evidence. E.g., Griffin v. Wainwright, 760 F.2d 1505,1513 (11th Cir. 1985). Trial counsel's strategic decision not to call witnesses is not subject to second guessing. Messerv. Kemp, 760 F.2d 1080, 1092 (11th Cir. 1985); Solomonv. Kemp, 735 F.2d 395, 404 (11th Cir. 1984) ("while attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made.")
(m) Petitioner has not only failed to show that his trial counsel's performance was deficient, but also has failed to prove prejudice. Petitioner has failed to show that he would not have been sentenced to death had Fannin and Pitts presented his new "mitigating" evidence. At his trial, petitioner denied participation in the murder of Mr. Donahoo and he has continued to deny any participation. Indeed, at the coram nobis hearing when petitioner was asked whether the allegedly mitigating evidence contributed to his committing the offense, he responded that he did not kill Macon Donahoo. Petitioner has failed to establish *Page 487 
prejudice because his evidence is at best inconclusive and in part harmful to himself. Petitioner, given the opportunity to present evidence to support his claims, has not met his burden of proving that "but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland v. Washington, supra, 104 S.Ct. at 2068.
(n) Even if the testimony petitioner elicited from his witnesses were truthful, the instances he insists should have been presented as mitigation, would not have constituted mitigation in petitioner's case.
 D. Alleged Failure to Make a Sufficient Challenge to the Admission of Petitioner's Confession
In paragraphs 24-27 of his petition, petitioner alleged that his trial counsel were ineffective in connection with their efforts to suppress his confession. Petitioner alleged that his lawyers were ineffective because they did not file a pre-trial motion to suppress his confession and because they did not challenge the introduction of his confession on Fourth andSixth Amendment grounds. As to these claims, the Court finds the following:
(1) In support of this claim, petitioner offered his own testimony. Respondent presented the testimony of Hank Fannin, R.D. Pitts, Robert Rumsey, Jerry Studdard, Dennis Surett and Willard Hurst. Respondent also presented State's Exhibit 1, a certified copy of the case action summary for petitioner's Calhoun County receiving stolen property case, and State's Exhibit 2, a certified copy of a Calhoun County arrest warrant charging petitioner with receiving stolen property. In addition, the court had before it the transcript and record of petitioner's capital murder trial.
(2) Petitioner's testimony at the coram nobis hearing was largely the same as his testimony at the suppression hearing held outside the presence of the jury at his capital murder trial. (T.R.[1] 400-419, 452458). The new allegations made by petitioner at the coram nobis hearing were that he made the September 15, 1982 statement so that his conjugal visits would be restored, that he asked for a lawyer before making his September 15, 1982 statement, and that his Talladega County robbery charge resulted from his demand to be charged with robbery.
(3) At the coram nobis hearing, petitioner testified that he was arrested in California and agreed to return to Alabama only after he was assured by District Attorney Rumsey that he would not be prosecuted for murder. Petitioner testified that he made the September 15, 1982 statement only after he was told by Sheriff Studdard that he would not have any conjugal visits until he cooperated and confessed. Petitioner testified that he made the October 18, 1982 statement because he was told it was needed for a polygraph examination he wanted to take.
(4) Sheriff Studdard testified at both the coram nobis hearing and at petitioner's capital murder trial. Studdard did not allow petitioner to receive conjugal visits in the Talladega County jail and he did not tell petitioner that such visits would be stopped unless he confessed. Petitioner never requested an attorney in Sheriff Studdard's presence. Sheriff Studdard's testimony at the hearing matched his testimony at the suppression hearing during petitioner's trial. (T.R. 397-398, 437-439). Petitioner was on loan to the Talladega County jail from Calhoun County and Calhoun County knew where petitioner was if they had needed him. Petitioner was held in Talladega on the Calhoun County receiving stolen property warrant. Sheriff Studdard was never told the petitioner needed to go to Calhoun County. Sheriff Studdard would have returned petitioner to Calhoun County if he had known he needed to go there. Sheriff Studdard would not have held someone in jail for a lengthy period without a charge. After hearing Sheriff Studdard's testimony and observing his demeanor, the court finds that his testimony is credible. *Page 488 
(5) District Attorney Rumsey testified at the coram nobis hearing. District Attorney Rumsey discussed what charge to bring against Waldrop with Sheriff Studdard, Dennis Surett and Willard Hurst when Surett and Hurst returned from their trip to California and their interview with petitioner there. Petitioner was charged with receiving stolen property in Calhoun County because that was the best, most serious charge that could be proved at that time. Petitioner had not admitted, and there was not probable cause for charging petitioner with, an offense in Talladega County. District Attorney Rumsey was told that petitioner would waive extradition to Alabama after Surett and Hurst returned from their to California. District Attorney Rumsey never told petitioner that he would only be prosecuted for receiving stolen property if he would agree to return to Alabama. The court having heard District Attorney Rumsey's testimony and observed his demeanor finds that his testimony is credible.
(6) District Attorney Rumsey began the grand jury investigation into the Macon Donahoo's death in September, 1982. Petitioner's involvement in Donahoo's death was presented to the next session of the grand jury in December, 1982 and that grand jury indicted petitioner for capital murder. Petitioner was indicted after admitting his involvement in the capital offense in his September 15, 1982 statement and his October 18, 1982 reiteration of that statement. Petitioner never requested an attorney in District Attorney Rumsey's presence. District Attorney Rumsey never had petitioner's visits, conjugal or otherwise, stopped as part of an attempt to get petitioner to confess. Petitioner never made a request that he be returned to Calhoun County but rather wanted to be in Talladega. While petitioner was in Talladega, he and Eugene Singleton each attempted to establish that the other was more culpable in the Donahoo murder. District Attorney Rumsey did not obtain any investigative advantage from petitioner's being in the Talladega County jail and not in the Calhoun County jail.
(7) Dennis Surett testified at petitioner's trial and at the coram nobis hearing. Surett's testimony at the hearing matched his testimony at the suppression hearing during petitioner's trial. (T.R. 359-395, 420432). Petitioner never requested an attorney in Surett's presence. Surett never told petitioner that he could simply say that he had given petitioner a Miranda warning and be believed. Petitioner did not rehearse his September and October statements before they were recorded. Petitioner was never told that he would only be prosecuted for receiving stolen property if he would waive extradition to Alabama. The court having heard Surett's testimony and observed his demeanor, finds that his testimony is credible.
(8) Willard Hurst testified at petitioner's capital murder trial and at the coram nobis hearing. Hurst's testimony at the hearing matched his testimony at the suppression hearing during petitioner's trial. (T.R. 395-396, 441-451). Petitioner never requested an attorney in Hurst's presence. No one ever told petitioner that he would only be prosecuted for receiving stolen property if he would voluntarily return to Alabama. Hurst did not get a Calhoun County receiving stolen property warrant to hold the petitioner while the Donahoo murder investigation continued but rather because there was sufficient evidence to prove that crime at that point. Hurst never told petitioner that his visits would be stopped until he confessed. Hurst never stopped Doris Thomas from visiting petitioner as part of a scheme to get the petitioner to confess. The court having heard Hurst's testimony and observed his demeanor finds that his testimony is credible.
(9) R.D. Pitts represented petitioner at trial with Hank Fannin and testified at the coram nobis hearing. As part of his representation of petitioner, Pitts investigated the circumstances surrounding petitioner's arrest in California and his waiver of extradition to Alabama. He and Fannin talked to District Attorney Rumsey and the local officers involved. He and Fannin also talked to petitioner about what occurred in California. Pitts determined the petitioner had voluntarily waived extradition and returned to Alabama. The court, having *Page 489 
heard Pitts' testimony and observed his demeanor finds that his testimony is credible.
(10) Hank Fannin represented petitioner at trial and testified at the coram nobis hearing. Fannin and Pitts interviewed petitioner twelve times before his capital murder trial. Fannin talked with petitioner about the arrest in California. Petitioner never told Fannin that he had asked for an attorney in California. At the suppression hearing during petitioner's capital murder trial, Fannin raised every challenge to the confession that he thought he could make. Fannin had challenged the admission of confessions obtained after an unlawful arrest before petitioner's trial. The court having heard Fannin's testimony and observed his demeanor finds that his testimony is credible.
(11) Petitioner's testimony was squarely contradicted by respondent's evidence at the coram nobis hearing and by the trial record and transcript. The court heard petitioner's testimony and that of respondent's witnesses. Based on that testimony, the trial transcript and record, and the court's observation of the demeanor of the witnesses, the court finds that petitioner's testimony was not credible.
(12) The evidence at trial and the coram nobis hearing established that trial counsel were aware of the circumstances of the petitioner's arrest, the length of his confinement, his waiver of extradition and the circumstances surrounding the September 15 and October 18, 1982 statements. After investigation, trial counsel focused on a challenge to the adequacy of the Miranda warnings given to petitioner. It is significant to note, however, that trial counsel did elicit testimony from the petitioner concerning the purported promises made to petitioner to obtain a waiver of extradition and petitioner's claims to have demanded the appointment of counsel. (T.R. 452-454, 407-408). In short, trial counsel presented much the same evidence at trial as coram, nobis counsel presented to show trial counsel were ineffective. Trial counsel's strategic decision to focus on the adequacy of the Miranda warnings, made after investigation and with knowledge of the circumstances of the petitioner's arrest and confinement, did not render their performance deficient.
(13) Given the evidence at trial and at the coram nobis hearing, the court finds that the petitioner has failed to show that his trial counsel's performance was deficient due to the absence of challenges to his confession based on the Fourth andSixth Amendments to the United States Constitution. Since the failure to prove that an attorney's performance was deficient is fatal to an ineffective assistance of counsel claim, the petitioner is not entitled to relief on this claim.
(14) Petitioner's contention that trial counsels' performance was deficient because they failed to file a pre-trial motion to suppress petitioner's confession is frivolous. Trial counsel obtained what a defendant is entitled to before a confession may be introduced, a hearing on the voluntariness of that confession. E.g., Jackson v. Denno, 378 U.S. 368,376-377, 84 S.Ct. 1774, 12 L.Ed.2d 908, 915-916 (1964). Their performance was not rendered deficient because no written motion to suppress was filed or because no pre-trial suppression was held. The suppression hearing at petitioner's trial was in accordance with standard procedure in this circuit. Petitioner's claim presents precisely the sort of focus on minutia and strategic second guessing that the United States Supreme Court rejected in Strickland v. Washington,supra. Petitioner is not entitled to relief on this claim.
(15) Petitioner not only failed to show his trial counsel's performance was deficient but also failed to show a reasonable probability, but for their failure to make Fourth andSixth Amendment challenges to his confession or to file a pre-trial suppression motion, the outcome of his trial would have been different. Petitioner's failure to establish prejudice resulting from the alleged failures of trial counsel is also fatal to this claim.
(16) There is no basis for a Fourth Amendment challenge to petitioner's confession. The trial record shows that petitioner *Page 490 
was arrested in California, voluntarily waived extradition to Alabama and while in lawful custody in Alabama pursuant to a warrant, State's Exhibit 2, confessed. Petitioner's assertion that he was not taken before a magistrate upon his return to Alabama does not implicate any Fourth Amendment right. Admittedly, a person arrested without a warrant is entitled to be taken before a magistrate or judicial officer for a determination that there is probable cause to detain that person for trial. Gerstein v. Pugh, 420 U.S. 103,95 S.Ct. 854, 43 L.Ed.2d 54 (1975). However, in Gerstein v.Pugh the Supreme Court also recognized that no such post-arrest probable cause determination is necessary for persons arrested on a warrant. 420 U.S. at 116 n. 18. A post-arrest probable cause determination is not necessary after an arrest on a warrant because a showing of probable cause is necessary to obtain an arrest warrant. In a subsequent case,Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689,61 L.Ed.2d 433 (1979), the Court noted:
 By virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. Gerstein v. Pugh, 420 U.S. 103, 43 L.Ed. 2d 54, 95 S.Ct. 854 (1975). The probable-cause determination "must be made by a judicial officer either before or promptly after arrest." Id., at 125, 43 L.Ed.2d 54, 95 S.Ct. 854. Since an adversary hearing is not required, and since the probable-cause standard for pre-trial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.
443 U.S. at 142-143, 99 S.Ct. at 2693-94, 61 L.Ed.2d at 440-441
(Footnote omitted); See, Brown v. Edwards,721 F.2d 1442, 1452 n. 14 (5th Cir. 1984); United States v.Allen, 574 F.2d 435, 439-440 (8th Cir. 1978). Because petitioner was arrested pursuant to an arrest warrant issued after a showing of probable cause and because that warrant was in effect while he was in custody until he was indicted for capital murder, petitioner does not fall within the rule ofGerstein v. Pugh and was not entitled to a post arrest probable cause hearing. His confession, therefore, was not obtained in violation of any right to a probable cause hearing.
(17) Additionally, the mere failure to provide a defendant with a preliminary hearing does not violate any of his constitutional rights. Harris v. Estelle,487 F.2d 1293, 1296 (5th Cir. 1974); See, Stephenson v.Gaskins, 539 F.2d 1066, 1068 n. (5th Cir. 1976); Perryv. Jones, 506 F.2d 778 (5th Cir. 1975). In Harris v.Estelle, supra, the Fifth Circuit held that:
 The district court was correct in holding that the denial of Harris' request for a preliminary hearing does not present a constitutional issue. Even if Harris' statement that he requested such a hearing is taken as true, it was not a procedure required by state law, and this ends the matter, since there is no federal constitutional right to a preliminary hearing. . . .
487 F.2d at 1296 (citations omitted).
(18) State law does not provide an absolute right to a preliminary hearing. E.g., Copeland v. State,455 So.2d 951, 955 (Ala.Cr.App.), cert. denied,455 So.2d 956 (Ala. 1984). In Copeland, the defendant made a timely demand for a preliminary hearing. This case was set several times but continued each time, at least once at the state's request. The defendant was indicted without ever receiving a preliminary hearing. In affirming the defendant's conviction, the Alabama Court of Criminal Appeals held that Alabama law does not create an absolute right to a preliminary hearing and that a preliminary hearing is not necessary to provide a defendant with due process. 455 So.2d at 955.
(19) Petitioner was not denied any Fourth Amendment right by his incarceration on the Calhoun County receiving stolen property warrant. He had no right to a post-arrest probable cause determination because he was arrested pursuant to a *Page 491 
lawful warrant. He had no constitutional right to a preliminary hearing. Petitioner was not prejudiced by his trial counsels' not challenging his confession on Fourth Amendment grounds.
(20) There is also no basis for a Sixth Amendment challenge to the admission of petitioner's confession. Petitioner's right to counsel under Miranda did not derive from theSixth Amendment, but rather existed to protect his Fifth Amendment rights. E.g., United States v. Gouveia, 467 U.S. 180,187, 104 S.Ct. 2292, 2297 n. 5, 81 L.Ed.2d 146, 154 n. 5 (1984). The court found at trial and finds based on the evidence of the coram nobis hearing that petitioner did not assert his right to counsel under Miranda. As for petitioner's Sixth Amendment right to counsel, it had not attached when petitioner confessed.
(21) Under United States v. Gouveia, supra, petitioner was not denied any Sixth Amendment rights. InGouveia, the defendants were prison inmates who had murdered other inmates. Each defendant had been placed in a segregation unit after committing the offenses, one for nineteen months and one for eight months, until indicted for murder. The Ninth Circuit Court of Appeals reversed the defendant's convictions because they had not received counsel during their pre-indictment stay in segregation. The United States Supreme Court reversed the Ninth Circuit and held that the possibility of prejudice from the passage of time in custody did not warrant the extension of the Sixth Amendment right to counsel to these defendants. Like the defendants inGouveia, petitioner seeks to predicate a denial of hisSixth Amendments rights on the fact that he was incarcerated for four months without counsel being appointed. Like the defendants in Gouveia, he has failed to show a Sixth Amendment violation.
(22) The Sixth Amendment right to counsel attaches when adversary judicial proceedings are initiated against the defendant. E.g., United States v. Gouveia, supra. The right to counsel attaches at this point because:
 We have recognized that the "core purpose" of the counsel guarantee is to assure and aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." . . .
467 U.S. at 188-89, 104 S.Ct. at 2298, 81 L.Ed.2d at 154. The right to counsel has been extended to certain pre-trial stages because a lawyer is needed to deal with procedures or the prosecution. 475 U.S. at 189, 104 S.Ct. at 2298,81 L.Ed.2d at 155. The right to counsel exists to protect an accused during trial-like confrontations with the State. 475 U.S. at 190,104 S.Ct. at 2298, 81 L.Ed.2d at 155. The United States Supreme Court has never held that an accused has Sixth Amendment right to counsel at the time of arrest. 475 U.S. at 190,104 S.Ct. at 2298, 81 L.Ed.2d at 155.
(23) Adversary judicial proceedings had not begun when petitioner confessed. Under Alabama law, felony prosecution begins with an indictment. E.g., State ex rel Baxley v.Strawbridge, 52 Ala. App. 685, 296 So.2d 779, certdenied, 292 Ala. 506, 296 So.2d 784 (1974); see,Alabama Constitution of 1901, Amendment 37. TheSixth Amendment right to counsel does not attach at interrogations before the initiation of adversary proceedings. See, Moranv. Burbine, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146,89 L.Ed.2d 410, 54 U.S.L.W. 4265, 4269 (1986); United Statesv. Gouveia, supra, 467 U.S. at 190, 104 S.Ct. at 2298,81 L.Ed.2d at 155. Petitioner did not need to have counsel in order to be able to waive counsel. Gilpin v.United States, 415 F.2d 638 (5th Cir. 1969); accord,United States v. Benson, 495 F.2d 475, 478 (5th Cir. 1974). AnySixth Amendment challenge to admission of petitioner's confession would not have succeeded. Petitioner has failed to prove that there is a reasonable probability that, but for trial counsel's failure to make a Sixth Amendment challenge to his confession, the outcome of this trial would have been different. Petitioner is not entitled to relief on this claim.
(24) Petitioner also failed to establish that he was prejudiced by trial counsel's failure to file a pre-trial motion to suppress. Petitioner presented no evidence to *Page 492 
show how he would have benefited by having a suppression hearing before trial. If anything, the fact that petitioner's coram nobis testimony was essentially the same as that elicited by trial counsel at the suppression hearing shows that the petitioner was not prejudiced by his trial counsels' decision. Petitioner has utterly failed to show a reasonable probability that, but for trial counsel's failure to file a pre-trial motion to suppress or request a pre-trial suppression hearing, the outcome of this trial would have been different. Petitioner is not entitled to relief on this claim.
 E. Failure to File Allegedly Necessary Pre-trial Motions
In paragraphs 28-31 of the petition, petitioner alleged that his trial counsel were ineffective for failing to file a motion "challenging the court's striking of prospective jurors because of their inability to consider the death penalty," a motion requesting an evidentiary hearing on the alleged arbitrary, capricious and discriminatory imposition of the death penalty for the murder of white victims, and a motion for individual voir dire and a sequestered venire. Additionally, petitioner alleged that trial counsel were ineffective for failing to file a pre-trial motion to suppress petitioner's statements. The Court has already entered its findings as to trial counsel's not filing a motion to suppress, see, paragraphs D(14), (21) above. As to the remaining claims, the Court finds as follows:
(1) The court must decide these claims from the transcript and record. Petitioner did not present any evidence to establish the trial counsel's performance was deficient for failing to file the listed motions and that petitioner was prejudiced by trial counsel's failure to file such motions. Petitioner has the burden of proving both a deficient performance and prejudice. Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984);United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039,2046, 80 L.Ed.2d 657 (1984); Ex parte Baldwin,456 So.2d 129, 134 (Ala. 1984). Trial counsel "are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington,supra, 104 S.Ct. at 2066.
(2) As to a motion to prevent "death qualification" of potential jurors, the court finds that two jurors were excluded for cause because neither could impose capital punishment in any cases no matter what the evidence. (T.R. 9-11). Potential jurors who cannot impose the death penalty under any circumstances may be excluded for cause from jury service.E.g., Witt v. Wainwright, 469 U.S. 412, 420,105 S.Ct. 844, 850, 83 L.Ed.2d 841, 849 (1985) (test is whether a juror's views on capital punishment would "prevent or substantially impair" a juror's ability to perform duties "in accordance with his instructions and his oath.").
(3) The Alabama Court of Criminal Appeals has rejected the contention underlying petitioner's motion to prevent "death qualification." Clark v. State, 451 So.2d 368, 370
(Ala.Cr.App.), cert. denied, No. 83-650 (Ala. 1984) (defendant not denied fair and impartial trial by virtue of jury being death qualified). Additionally, the Eleventh Circuit Court of Appeals has recently, unanimously rejected an argument identical to petitioner's death qualification argument.McCleskey v. Kemp, 753 F.2d 877, 901 (11th Cir. 1985) (en banc).
(4) Petitioner has failed to meet his burden of establishing the trial counsel were constitutionally deficient for failing to make this "death qualification" motion. Petitioner has not shown any binding legal basis for such a motion in Alabama. Petitioner has merely shown that trial counsel did not do something his current counsel would have done. Petitioner's after the fact assertion that such a motion was necessary in order to provide him with constitutionally effective counsel is utterly without merit. Petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance and used reasonable professional judgment.
(5) Additionally, petitioner has failed to meet his burden of proving a reasonable probability that, but for trial counsel's failure to file a motion challenging "death *Page 493 
qualification" of potential jurors, the outcome of petitioner's trial would have been different. Petitioner has shown no factual basis for his contention and the same contention has been rejected by the Alabama appellate courts. Clearly, even if trial counsel had made petitioner's asserted motion, petitioner would not have been entitled to relief. Petitioner, thus, has failed to show prejudice and is not entitled to relief on this claim.
(6) As to a motion challenging the arbitrary, capricious and racially discriminatory imposition of the death penalty in Alabama according to the race of the victim, petitioner has failed to prove that trial counsel was ineffective. Petitioner has presented no evidence in support of his contention that the death penalty is imposed arbitrarily, capriciously or in a racially discriminatory manner. The trial transcript and record is devoid of even a suggestion that petitioner's death sentence was imposed arbitrarily, capriciously or in a racially discriminatory manner. Because petitioner has presented no evidence to show that capital punishment is imposed in a constitutionally impermissible manner he has clearly failed to overcome the strong presumption that counsel were effective and has failed to show a reasonable probability that, but for his trial counsel's failure to make the challenge, the outcome of his trial would have been different. Petitioner has not shown that he is entitled to relief on this claim.
(7) As to a motion for individual voir dire and sequestered venire, petitioner has failed to show that trial counsel were ineffective. Petitioner presented no evidence to show any benefit to him that would have derived from individual voir dire or from sequestering the jury venire during voir dire.
(8) The trial transcript shows that trial counsel conducted an extensive voir dire examination of the venire. (T.R. 11-20). Fannin conducted the jury voir dire and inquired into juror knowledge of the prosecution and of prosecution witnesses. (T.R. 11-15). As a result of this examination, one prospective juror was removed for cause. (T.R. 14). Fannin also inquired into the venire members relationship with law enforcement, prior juror experience, bias toward law enforcement witnesses, knowledge of the case, presumption of innocence, prejudice against petitioner because he had been arrested and indicted, and prejudice against petitioner if he did not testify. (T.R. 15-20).
(9) Petitioner has again failed to overcome the strong presumption that trial counsel were effective and exercised sound professional judgment in their voir dire of the jury venire. Further, petitioner has utterly failed to show how individual voir dire or sequestering the venire would have had any effect whatsoever on petitioner's trial. Thus, petitioner has failed to show a reasonable probability that, but for trial counsel's failure to file a motion for individual voir dire and a sequestered venire, the outcome of his trial would have been different. Petitioner is not entitled to relief on this claim.
(10) At the two day evidentiary hearing held in this case, petitioner did not present any evidence in support of his claim that trial counsel were ineffective for failing to file motions which petitioner now asserts were important and well founded. Petitioner has, therefore, failed to prove either that his trial counsel's performance was deficient or that he was prejudiced by the lack of these motions. Petitioner is not entitled to relief on this claim.
 F. Alleged Failure to Preserve Issues at Trial
In paragraphs 32-35 of the petition, petitioner alleged that trial counsel were ineffective for failing to object to two events at trial in order to preserve issues for direct appeal. As to this claim, the Court finds as follows:
(1) While the Court has before it the trial transcript and record, petitioner presented no evidence in support of this claim. Respondent presented the testimony of Hank Fannin and R.D. Pitts. The Court finds that the trial transcript and the testimony of Fannin and Pitts show that trial counsel rendered effective assistance.
(2) Petitioner's first contention is that trial counsel ought to have objected to witness *Page 494 
Whistenant's testimony concerning a hearsay statement made by Henry Mays, a participant with petitioner in the Donahoo murder. At trial, Whistenant testified that Henry Mays, outside of petitioner's presence and hearing, said that "they had a job or a score and that they were going to check it out and were gonna do it." (T.R. 64) Whistenant further testified that Mays returned the next day, without petitioner, and explained that he could not repay a loan from Whistenant because "he did not do the job because they went down there, and there were some old women in the house." (T.R. 64)
(3) On cross-examination by Fannin, Whistenant admitted that petitioner was not present when Mays told him about a job or score. (T.R. 65) Whistenant further admitted that petitioner was not at his house when May returned the next day. (T.R. 65-66) Whistenant testified on cross-examination that Mays said that he was going to get some money and did not mention anyone else's name. (T.R. 66) Whistenant never spoke with petitioner about a job or score. (T.R. 66)
(4) From the transcript, it is obvious that trial counsel chose to use Whistenant's testimony in an attempt to disassociate petitioner from Mays by showing that the petitioner had no knowledge of Mays planning a robbery. Fannin's cross-examination was consistent with an attempt to bolster petitioner's alibi defense and to implicate Mays. Trial counsel's attempt to turn testimony that was not particularly damaging to petitioner, in that it incriminated Mays only, into testimony helpful to his alibi defense, in that it suggested who other than the petitioner was guilty, was a reasonable strategic decision and is not subject to hind-sight-aided after the fact criticism. E.g., Strickland v. Washington,supra, 104 S.Ct. at 2065-2066.
(5) Petitioner has also failed to show that trial counsel's performance was deficient since there was a legal basis for Whistenant's testimony. His co-conspirator's statements may be admitted against a defendant. E.g. Cox v. State,367 So.2d 535, 541 (Ala.Cr.App. 1978), cert. denied,367 So.2d 542 (Ala. 1979). A conspiracy to rob Macon Donahoo had been established through the prosecution's first witness, Cary Milton Gaither. Of course, petitioner's trial counsel were not obliged to object without regard to the merits of the objection. Griffin v. Wainwright, 760 F.2d 1505 (11th Cir. 1985); Palmes v. Wainwright, 725 F.2d 1511, 1523
(11th Cir. 1974).
(6) Petitioner has not only failed to show that trial counsel's performance was deficient for failing to object to the cited testimony by Whistenant but also has failed to establish that he was prejudiced by their failure to object. As noted above, Whistenant's testimony was admissible. Further, even if Whistenant's testimony had not been admissible there is not a reasonable probability that but for this testimony the outcome of petitioner's trial would have been different.
(7) Whistenant's testimony at best showed petitioner to be involved in with Henry Mays in planning and attempting to commit a robbery. The State introduced other evidence which showed the petitioner actually participated in planning to rob Macon Donahoo. For example, Cary Milton Gaither testified that Mays, Singleton and petitioner came to his house in May, 1982, to purchase guns. (T.R. 45-46) In petitioner's presence, Mays told Gaither that they wanted the guns for "some stick-ups." (T.R. 46-47) Mays mentioned Macon Donahoo by name in petitioner's presence. (T.R. 47) During the conversation about Macon Donahoo, petitioner said that "if the stash is there, he will tell me." (T.R. 49) This testimony, the introduction of which is not challenged by petitioner, was vastly more incriminating than that testimony to which petitioner alleges his lawyer should have objected. Petitioner has failed to show that keeping out a portion of Whistenant's testimony could have had any effect on his trial. Petitioner is not entitled to relief on this claim.
(8) Petitioner's second contention is that trial counsel should have objected to the prosecution asking witness Gaither about his Alabama felony convictions and should have attempted to prove that Gaither had *Page 495 
been convicted of a crime involving moral turpitude in Georgia. At trial, prosecution witness Gaither was asked "Have you ever been convicted of a felony under the laws of the State of Alabama?" and answered, "No, sir." (T.R. 44) Petitioner's trial counsel did not object to this question. Petitioner has failed to establish, however, that trial counsel's performance was therefore deficient or that petitioner was prejudiced by this nonobjection.
(9) Petitioner's contention that the prosecution's question to Gaither was objectionable because in an improper form and that trial counsel should have objected is absurd. First, the prosecution was not seeking to impeach his own witness since that witness did not testify contrary to any prior testimony and did testify to petitioner's detriment. The prosecution was obviously anticipating questions on cross-examination, as was done with other witnesses without objection. (T.R. 61-62, 171, 232) Further, the improper form of the question, it was not limited to crimes involving moral turpitude, was to petitioner's obvious benefit since more convictions than were proper could have been elicited. Petitioner has failed to show that trial counsel's performance was deficient because no objection to this question was made.
(10) Petitioner has also failed to show a reasonable probability that the outcome of petitioner's trial would have been different if trial counsel had objected to this question. Even assuming some merit in petitioner's contention that the prosecution should not have been allowed to impeach Gaither in this way, Gaither's answer was that he had not been convicted so that he was not "impeached."
(11) To the extent that petitioner contends that petitioner's trial counsel were ineffective for not proving that Gaither had a conviction for a crime involving moral turpitude in Georgia, the court finds that the petitioner failed to establish that trial counsel's performance was deficient or that he was prejudiced by their performance. At no point during the two day coram nobis hearing did petitioner present any evidence showing Gaither had ever been convicted of any crime. Trial counsel did not render ineffective assistance where the alleged evidence that should have been presented has not been proven to exist. Petitioner is not entitled to relief on this claim.
(12) Petitioner has failed to prove that trial counsel were ineffective. Petitioner has only shown his willingness to subject all of the occurrences of trial to microscopic, after-the-fact examination in a vain attempt to find some failing by trial counsel. The trial transcript and the evidence at the coram nobis hearing established, however, that petitioner was represented by dedicated and able trial counsel who acted at all times in his behalf. Petitioner received the effective representation he was guaranteed by the Constitution. Petitioner's conviction and death sentence were not imposed because of any action or failure to act on the part of his trial counsel. Petitioner was convicted and sentenced to death because of the great weight of the State's evidence.
 G. Conclusion
The Court finds that counsels' representation did not fall below an objective standard of reasonableness. The Court finds that any failure by trial counsel to present evidence at the punishment stage was attributable, in large measure, to the attitude, wishes, and direct instructions of the petitioner himself. The Court further finds that, if all of the evidence presented in the hearing of this cause had been presented at the punishment stage of petitioner's trial, there is no reasonable probability that the result of the proceeding would have been different.
Additionally, the Court finds that if by some remote possibility the jury had decided that the mitigating circumstances outweighed the aggravating circumstances and had recommended life without parole rather than death, the Court would not have been bound under the law to follow their recommendation. Given the aggravating circumstances presented by the State, including two prior murders committed by the petitioner, the Court, beyond question or any doubt, would have imposed a death sentence. Therefore, there is no reasonable probability, that in spite of what the petitioner's counsel did or did not do, the result of the proceeding would have been different. *Page 496 
 CLAIM TWO: ADMISSION OF ALLEGEDLY INVOLUNTARY CONFESSION
This claim is barred from review by a writ of error coram nobis because it was raised on direct appeal. Waldrop v.State, 459 So.2d 953, 955-956 (Ala.Cr.App. 1983),aff'd, 459 So.2d 959 (Ala. 1984). Coram nobis does not provide the means to relitigate issues already decided on direct appeal. Richardson v. State, 419 So.2d 289
(Ala.Cr.App.), cert. denied, No. 81-937 (Ala. 1982);Bass v. State, 417 So.2d 582, 584 (Ala.Cr.App.),cert. denied, 417 So.2d 588 (Ala. 1982). A coram nobis petition is due to be denied where the claims raised were reviewed on direct appeal. Ex parte Rudolph, 276 Ala. 392,393, 162 So.2d 486 (1964); Bies v. State,418 So.2d 940, 941942 (Ala.Cr.App. 1982); Summers v.State, 366 So.2d 336, 340 (Ala.Cr.App. 1978), cert.denied, 366 So.2d 346 (Ala. 1979). As petitioner's claim was decided against him by the Alabama Court of Criminal Appeals, petitioner is not entitled to a hearing or relief on this claim.
 CLAIM THREE: ALLEGED DENIAL OF IMPARTIAL JURY THROUGH "DEATH QUALIFICATION" PROCESS
This claim is barred from review by a writ of error coram nobis because it could have been raised at trial and on direct appeal but was not. Coram nobis is not available to review new issues that were not raised at trial or on direct appeal.Ex parte Ellison, 410 So.2d 130, 132 (Ala. 1982);Gwin v. State, 456 So.2d 845, 849 (Ala.Cr.App.),cert. denied, No. 83-1143 (Ala. 1984); Magwood v.State, 449 So.2d 1267, 1268 (Ala.Cr.App. 1984) (capital case). Coram nobis is not a means to obtain a second appeal.Bass v. State, 417 So.2d 582, 584 (Ala.Cr.App.)cert. denied, 417 So.2d 588 (Ala. 1982). Petitioner cannot now for the first time raise issues available to him at trial. Ex parte Rudolph, 276 Ala. 392, 393,162 So.2d 486 (1964); Summers v. State, 366 So.2d 336, 340
(Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). Petitioner could obviously have raised this claim at trial during the qualification of the jury venire but did not do so. Because this issue was not raised at trial, petitioner is not entitled to a hearing or relief on this claim.
 CLAIM FOUR: ALLEGED DISCRIMINATORY APPLICATION OF THE DEATH PENALTY
This claim is barred from review by a writ of error of coram nobis because it could have been raised at trial and on direct appeal but was not. As noted above as to Claim Three, coram nobis does not lie to review claims that could have been raised at trial, and on direct appeal but were not. As this claim could also have been raised by an appropriate motion or objection at trial, and no such motion or objection was made, petitioner is not entitled to either a hearing or relief on this claim, for the reasons set out as to Claim Three, above.
 FINAL JUDGMENT
Based on the findings set out above, it is ORDERED, ADJUDGED and DECREED that the petition for writ of error coram nobis be, and is hereby, DENIED.
Done this the 28th day of July 1986.
 /s/ William C. Sullivan
WILLIAM C. SULLIVAN PRESIDING JUDGE TWENTY-NINTH JUDICIAL CIRCUIT
[1] "T.R." refers to pages in the transcript and record of petitioner's capital murder trial.