306 So.2d 290

**Robert M. HALL**

v.

**STATE.**

**5 Div. 205.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Oct. 29, 1974.

James T. Gullage, Opelika, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Special Asst. Atty. Gen., for the State.

PER CURIAM.

The defendant, Robert M. Hall, was indicted and convicted by a jury in the Circuit Court of Lee County, Alabama, of violating the Alabama Controlled Substances Act, Act No. 1407, 1971 Regular Session, specifically of selling marijuana to one Robert M. Patterson. The trial court imposed the maximum sentence of fifteen years in the penitentiary. From the judgment of conviction and the imposition of sentence he brings this appeal.

Before trial, appellant filed a motion for a change of venue on the ground that Judge Tyner, the trial judge, on the day before appellant's trial, had announced in another marijuana case in open court in the presence of the jury venire that he would not grant probation in any marijuana or other drug conviction. The motion was denied. However, appellant does not mention this ruling of the court in his brief, so we assume that he has abandoned any insistence upon error.

The State's case as to the alleged sale of the marijuana was based on the testimony of Sergeant Robert M. Patterson, a narcotics investigator for the Alabama Public Safety Department. He testified that he resided in Huntsville, but that in February, 1973 he was temporarily assigned to Auburn. There he made contact with one Jimmy Stanfield, an informer, who accompanied him to the apartment of appellant at 440 Glenn Street, Apt. B, Auburn. The time was 4:30 P.M. Appellant Hall was at home. After some preliminary negotiations between Hall and Stanfield, Hall brought out a cellophane package of what later was identified as marijuana and placed it on a bedside table, told Patterson and Stanfield to try it, and withdrew from the room.

While he was out Patterson and Stanfield rolled a cigarette of the substance and smoked it by passing it back and forth between them. Shortly Hall returned and inquired how they liked it. They indicated that they were pleased, whereupon Patterson offered Hall a ten-dollar bill and a five-dollar bill, but Hall pointed to the table, where Patterson put the money and picked up the package of marijuana. After drinking a beer at Hall's invitation, they walked out and made their departure. As they were leaving, Hall inquired if they left the money on the table. They answered that they did.

Later that evening Patterson gave the package of marijuana to Sergeant E. J. Gosden of the State Trooper Investigator Division, after having sealed the plastic bag in an envelope and written some identifying words on the envelope.

Sergeant Gosden testified that he received the envelope from Patterson on March 30, 1973, and kept it in his possession in its sealed condition until Monday, April 2, 1973, when he delivered it to one Taylor Noggle, a state toxicologist.

Noggle in his testimony identified the substance as marijuana, whereupon the envelope, bag, and marijuana were admitted into evidence. Appellant's objection to the writing on the envelope was over-ruled on the ground that the writing was for identification only.

Thereupon the State rested, and appellant's motion to exclude the State's evidence was overruled.

■ Defendant's defense was predicated upon the testimony of himself, who categorically denied all of Sergeant Patterson's testimony, and five witnesses, including his wife, who testified to having been in and out of defendant's apartment from about 3:30 in the afternoon of March 30, 1973 until about 10 o'clock that night during which time Sergeant Patterson and Stanfield did not come to the apartment and the defendant did not sell marijuana to anybody.

The following colloquy is taken from the transcript of Sergeant Patterson's testimony:

"Q. Now, these two individuals that were in the kitchen when you all went in to drink a beer, would you describe their appearance that you recall?

"A. Best I can recall, one of them was a white female and she appeared to have Spanish descent, kind of a Spanish—

"The Court: Don't drop your voice.

"The Witness: Looked kind of like a Spanish girl, your Honor, and the other boy was, he had dark hair and dungarees and I can't recall the kind of shirt he had on."

The following is an excerpt from the court's oral charge:

"Of course, the defendant's claim is that Sergeant Patterson—was not there. On the other hand the State claims—and I'm not commenting on the evidence, I'm just telling the respective claims of the State—now the State claims that Sergeant Patterson was there. You heard the testimony about that. You heard Sergeant Patterson testify as to who he saw there when he got there; what they looked like. *You heard him testify that he saw a 'Spanish type' woman there when he got there, sitting in the kitchen.* That's the State's claim." (Emphasis supplied)

At the end of the court's oral charge the defendant objected to that portion of the court's oral charge in which the court charged the jury that Sgt. Patterson saw a Spanish type woman sitting there at the kitchen table. He now argues that the court, by so charging, committed reversible error.

Title 7, Section 270, 1940 Code of Alabama provides:

"The court may state to the jury the law of the case, and may also state the evidence *when the same is disputed*, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties". (Emphasis supplied)

Inasmuch as it was disputed that Patterson even visited Hall's apartment on the occasion in question, it follows that Patterson's having there seen a "Spanish-type" woman was one of the facts in dispute and that Title 7, Sec. 270, supra, authorized the trial judge to "state" the State's evidence. We do not think that the jury might have gleaned from this statement of the judge that he was biased in any direction. Appellant quotes Judge Bricken in Dennison v. State, 17 Ala.App. 674, 88 So. 211 as saying:

"That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would of necessity effect a reversal of the judgment and a remandment of the cause."

We think all of the errors hereinabove enumerated by Judge Bricken in the Dennison case are missing from Judge Tyner's quoted statement, and that he did not fall into error here.

■ The second remark of Judge Tyner's to which defendant excepted and which he now asserts was error is the last sentence underscored of the following quote from his oral charge:

"Now, there is no law against any law enforcement agencies using an informer, i-n-f-o-r-m-e-r. All law enforcement agencies use informers. The F.B.I., the Sheriff's Departments, the Police De-

partments, all over. The State of Alabama, and this county. *If they didn't have informers sometimes they could never obtain the evidence.*

(Emphasis supplied in appellant's brief.)

Appellant cites no authority for his assertion that the judge fell into error here, nor do we find an authority for or against, but we would categorize the entire statement as harmless surplusage. It is true that it was not a necessary part of the oral charge, but we view it as an effort on the part of the judge to remove from the minds of the jurors any prejudice that they might have had against informers. Appellant may feel that he was entitled to the benefit of such prejudice if it existed. We don't. The judge committed no error here.

■ The third supposed error argued by defendant's able counsel is that the court committed reversible error in charging the jury that "A reasonable doubt means a real doubt or a substantial doubt growing out of the evidence. It is a doubt for which a reason can be given." The defendant, at the close of the oral charge, properly excepted to that portion of the oral charge.

In King v. State, 17 Ala.App. 536, 87 So. 701, the Court of Appeals approved a definition of a reasonable doubt in almost the exact language as that used by Judge Tyner. The Supreme Court denied certiorari. 205 Ala. 11, 87 So. 703.

From Jones et al. v. State, 120 Ala. 303, 25 So. 204, we quote:

"The court in its oral charge to the jury, in defining the 'reasonable doubt' . . . said, 'it is a doubt for which a reason may be given;' and to this definition the defendants excepted. This court has settled that this is one of the correct definitions of a 'reasonable doubt.' Walker v. State, 117 Ala. 42, 23 So. [149] 153; Hodge v. State, 97 Ala. 37, 12 So. 164; Ellis v. State, 120 Ala. 333, 25 So. 1."

The court did not err in its definition of a reasonable doubt.

■ Next, defendant charges error for the failure of the court to grant his application for probation and then to impose a sentence of fifteen years in the penitentiary, the maximum under the law, saying, among other things, "the appellant respectfully insists that to sentence the defendant, a young, employed married man, to 15 years in the penitentiary for the sale of less than ½ ounce of marijuana to a member of a law enforcement body is an abuse of discretion and that the case should be sent back to the trial court for pre-sentence investigation before sentence is imposed". We agree with portions of this statement, particularly with its criticism of the length of the sentence, but we must remind appellant that the trial judge was acting within his discretion, and that if we were to reverse and remand because we disagree with him we would be abusing our discretion or usurping discretion which we do not have. Likewise, with the question of probation, which, under the law, is an act of mercy which only the trial judge may indulge.

■ Finally, appellant argues that it was error to admit into evidence, over appellant's timely objection, the writing on the envelope in which the cellophane bag of marijuana was contained. The envelope is before us. The writing on it is only identifying material. We think it was relevant in that it supplied the necessary unbroken chain of its possession from the time Patterson bought it until it was introduced in evidence, and that its admission was not error.

We have carefully examined the entire record, including the transcript of the evidence, as required by Tit. 15, § 389, Code of Alabama 1940, Recompiled 1958, and we find no error.

The judgment in this cause is

Affirmed.

All the Judges concur.

CATES, Presiding Judge (concurring specially).

### I

I am concurring specially because I think that the role of undercover agents and informers requires a bit more amplification.

Here the agents themselves committed a breach of the Act, i. e., they smoked marihuana. This, of course, the jury could view as a ruse to disarm Hall. Hall apparently exhibited a predisposition to sell this contraband. If so, he was not entrapped. See Lindsay v. State, 41 Ala. App. 85, 125 So.2d 716.

When, however, a crime originates in the mind of the informer, or undercover agent, the court is confronted with a more difficult situation. Secretary Stimson disapproved of peacetime espionage saying, "Gentlemen do not read each other's mail." Many feel the same way about entrapment.

Secretive crimes in particular require sophisticated modes of detection and hopefully, prevention. Traps and snares for the wicked enjoy universal acclaim.

### II

As to the severity of the sentence I can only say two things: First, we do not have Hall's prior record before us and second the Legislature has never given us any authority to review sentences except as to being within statutory limits.

I am aware that a number of recommendations have been made for us, like the English Court of Appeal, to have such power. ABA Standards of Criminal Justice, Appellate Review of Sentences.

Any such change will be illusory unless either the law or rule of court gives explicit and detailed methods, norms and other guidelines, both for the trial judge and the appellate tribunal.