PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

—————————————

No. 94-6687

—————————————

D. C. Docket No. CV90-H-1845-S

BILLY WAYNE WALDROP,

Petitioner-Appellant,

versus

RONALD E. JONES,

Respondent-Appellee.

—————————————

Appeal from the United States District Court
for the Northern District of Alabama

—————————————

(February 26, 1996)

Before KRAVITCH, EDMONDSON and COX, Circuit Judges.

COX, Circuit Judge:

Billy Wayne Waldrop was convicted in Talladega County, Alabama, for murder and sentenced to death. He appeals the denial of relief on his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

On the night of June 2-3, 1982, Thurman Macon Donahoo was robbed, beaten, shot, and left for dead in his house as it burned to the ground. Investigators found his body, charred almost beyond recognition, during their investigation of the fire. Suspicion about the identity of the perpetrator focused almost immediately upon Billy Wayne Waldrop.

In July 1982 Waldrop was arrested in California on a charge of driving under the influence of alcohol. He waived extradition and was returned to Alabama based on a warrant issued by the Calhoun County Circuit Court charging him with receipt of stolen property. Apparently the property in question was that taken from Donahoo's home on the night of his murder. Although Waldrop was returned to Alabama on the basis of a Calhoun County warrant, he was taken to Talladega County on August 19, 1982. While incarcerated there, Waldrop gave two statements implicating himself in the Donahoo robbery and murder.

In December 1982 Waldrop was indicted on six counts of capital murder. The first four counts of the indictment charged variations of murder during the course of a first degree robbery. See **Ala. Code** § 13A-5-40(a)(2). Counts five and six charged murder during

two separate types of first degree burglary.  See **Ala. Code** § 13A-5-40(a)(4).

On February 18, 1983, the petitioner was found guilty of the murder of Donahoo.  On the same day, the jury unanimously recommended the imposition of the death penalty.  After a separate sentencing hearing on March 22, 1983, the trial court sentenced the petitioner to death.  On direct appeal, the Alabama Court of Criminal Appeals affirmed the conviction and sentence and denied rehearing.  Waldrop v. State, 459 So. 2d 953 (Ala. Crim. App. 1983).  The Alabama Supreme Court affirmed, Ex parte Waldrop, 459 So. 2d 959 (Ala. 1984), and the United States Supreme Court denied certiorari, Waldrop v. Alabama, 471 U.S. 1030, 105 S. Ct. 2050 (1985).

In June 1985 Waldrop filed a petition for writ of error coram nobis in the Circuit Court of Talladega County.  After an evidentiary hearing, the trial judge denied coram nobis relief. The Alabama Court of Criminal Appeals affirmed the denial of coram nobis relief.  Waldrop v. State, 523 So. 2d 475 (Ala. Crim. App. 1987).  Both the Alabama Supreme Court  and the United States Supreme Court denied certiorari.  Id.; Waldrop v. Alabama, 488 U.S. 871, 109 S. Ct. 184 (1988).

Waldrop filed a second petition for relief in November 1988 to vacate and set aside his conviction and death sentence pursuant to Rule 20 of the Alabama (Temporary) Rules of Criminal Procedure. The Circuit Court of Talladega County denied relief, and the Court of Criminal Appeals affirmed without opinion.  Waldrop v. State,

3

564 So. 2d 115 (Ala. Crim. App. 1990). Waldrop did not file a petition for writ of certiorari with the Alabama Supreme Court.

In September 1990 Waldrop filed the present petition for a writ of habeas corpus in the Northern District of Alabama. He later filed an amended petition, and in May 1991 filed a second amended petition. After construing the State's answer as a motion for summary judgment, the district court granted the State's motion and denied the petition for habeas relief. Waldrop v. Thigpen, 857 F. Supp. 872 (N.D. Ala. 1994).

II. ISSUES ON APPEAL

Waldrop raises several issues on appeal. First, he contends that the district court erred in denying him relief on his claim that his counsel was ineffective for failing to present mitigating evidence during the penalty phase of the trial. Second, Waldrop attacks the district court's conclusion that he procedurally defaulted his claim based on Cage v. Louisiana, 498 U.S. 39, 111 S. Ct. 328 (1990), that the jury instruction defining "reasonable doubt" violated the Due Process Clause of the Fourteenth Amendment. Finally, Waldrop challenges the district court's conclusion that his confession was properly admitted and not involuntary under the Fourteenth Amendment or obtained in violation of his Sixth Amendment right to counsel.[1]

---

[1] Waldrop also argues that several comments made during the prosecutor's summation at the penalty phase of the trial deprived him of a fundamentally fair trial. This argument is without merit and does not warrant further discussion. See 11th Cir. R. 36-1.

4

III.  <u>DISCUSSION</u>

A. Ineffective assistance of counsel

Waldrop contends that the district court erred in finding that his lawyers were not ineffective and that Waldrop was not prejudiced by their failure to present allegedly mitigating evidence during the sentencing phase of his trial.  Waldrop contends that his counsel failed to adequately investigate his background, thereby depriving the jury and judge of evidence of his violent and abusive family background, mental instability, and neurological damage from a gunshot wound inflicted in November 1981.  The State asserts that the district court correctly concluded that Waldrop showed neither ineffective assistance of counsel nor prejudice because of his counsel's failure to introduce this evidence.

Relying on the findings of the coram nobis court, the district court concluded that, although Waldrop's trial counsel's investigation of mitigating factors was "far from the most thorough," it was professionally reasonable.  <u>Waldrop v. Thigpen</u>, 857 F. Supp. at 916.  The district court also concluded that Waldrop was not prejudiced by his counsel's failure to introduce this allegedly mitigating evidence.  <u>Id.</u> at 919.

An ineffective assistance of counsel claim is a mixed question of law and fact, subject to de novo review.  <u>Strickland v. Washington</u>, 466 U.S. 668, 698, 104 S. Ct. 2052, 2070 (1984).  To prove ineffective assistance of counsel, a petitioner must prove that counsel's performance was deficient and that the deficiency

5

prejudiced the defendant. Id. at 687, 104 S. Ct. at 2064. To satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Mills v. Singletary, 63 F.3d 999, 1020 (11th Cir. 1995) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (internal quotation marks omitted). When challenging a death sentence, a petitioner must show that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695, 104 S. Ct. at 2069. Because a petitioner must satisfy both prongs of the Strickland test, a failure to prove either provides a sufficient basis to deny relief on the ineffective assistance claim. Id. at 697, 104 S. Ct. at 2069.[2]

Waldrop alleges that certain evidence about his background would have changed his sentence if it had been offered by his counsel. But the coram nobis court and the district court disagreed, finding that much of the evidence Waldrop offered was not credible and concluding that none of it would have altered Waldrop's sentence. The State urges that those findings are

_____

    [2] Although it first addressed the performance component and then moved to the prejudice component in Strickland, the Supreme Court specifically held that a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing on one. 466 U.S. at 696, 104 S. Ct. at 2069; see also Marek v. Singletary, 62 F.3d 1295, 1298 (11th Cir. 1995).

justified by the record. The state court's findings of fact are entitled to a presumption of correctness and are given deference if fairly supported by the record of the coram nobis hearing. 28 U.S.C. § 2254(d); see also Strickland, 466 U.S. at 698, 104 S. Ct. at 2070.

Waldrop first would have had his counsel introduce evidence of his allegedly abusive and traumatic childhood. He claims that as a child, he endured violent physical and sexual abuse. Waldrop testified that his father, uncle, and half-sister all sexually abused him, and he alleges that these experiences caused long-lasting effects on his behavior. See Waldrop v. State, 523 So. 2d at 483-84. But the evidence presented at the coram nobis hearing about Waldrop's childhood was contradictory and at times supported by nothing more than Waldrop's own testimony. See id. The state court found that the petitioner was not sexually abused as a child, id., and it also concluded that Waldrop failed to establish that he suffered any lasting negative effects from the alleged physical abuse, id. at 483. These findings are fairly supported by the record. The evidence about Waldrop's childhood, if presented, would not have weighed heavily as a mitigating factor.

Waldrop also contends that his counsel should have offered evidence of the neurological damage he allegedly suffers from a gunshot wound to his brain in 1981. Waldrop testified that the wound has caused lasting effects on his behavior. His mother, as well as several other family members, corroborated his testimony, and they stated that he had suffered seizures on several occasions.

7

Id. at 484-85. Dr. Zeiger, Waldrop's treating neurosurgeon, contradicted Waldrop's evidence; he testified that the wound had healed well and that there was no evidence of any resulting seizure activity. Dr. Zeiger also stated that the damage to Waldrop's frontal lobe did not affect either his mental or physical functioning. The coram nobis court credited the doctor's testimony and found that Waldrop suffered no behavioral effects as a result of the gunshot wound. Id. at 485. This finding is fairly supported by the record; thus, evidence of the gunshot wound would not constitute mitigation.

Waldrop also claims that evidence concerning his history of excessive alcohol and drug use constituted a mitigating factor. He alleges that the combination of his anti-seizure medication, which he took sporadically, and several illicit drugs altered his behavior. Waldrop also claims that he was severely depressed and had attempted suicide at the time of Donahoo's murder. The district court found that these facts, if shown, would not constitute evidence in mitigation of the death penalty. Waldrop v. Thigpen, 857 F. Supp. at 919. We agree; indeed, admission of some of this evidence might have been harmful to Waldrop's case.

In sum, the evidence that Waldrop claims his counsel should have introduced would not have changed the outcome in his case. We agree with both the coram nobis court and the district court that Waldrop has not demonstrated that his counsel's failure to present the evidence in question altered the outcome of the sentencing phase of his trial. "Given the [] aggravating factors, there is no

8

reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigation circumstances and, hence, the sentence imposed." Strickland, 466 U.S. at 700, 104 S. Ct. at 2071. Waldrop's claim must fail because he was not prejudiced by any ineffective assistance of counsel that may have occurred.

B. The jury instruction on reasonable doubt

Waldrop next challenges the trial court's jury instruction that "[a] reasonable doubt means an actual, substantial doubt."[3] He relies on Cage, 498 U.S. at 39, 111 S. Ct. at 328, to support his argument that the use of the phrase "actual, substantial doubt"

---

[3] The court's instruction on reasonable doubt was as follows:

> Now, you will want to know what a reasonable doubt is. When I say the state is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the state must prove an alleged crime beyond every imaginable or speculative doubt, or beyond all possibility of mistake, because that would be impossible.
> A reasonable doubt means an actual, substantial doubt. It could arise out of the testimony in the case or a reasonable doubt could arise from a lack of testimony in the case. It is a doubt for which a reason can be assigned, and the expression "to a moral certainty" means practically the same thing as "beyond a reasonable doubt" because if you are convinced to the point where you no longer have a reasonable doubt, then you are convinced to a moral certainty.

(Trial Tr., R.4-16 at 576-77.)
On appeal, Waldrop also challenges the portion of the instruction in which the trial court equates proof beyond a reasonable doubt with proof to a moral certainty. However, he did not present this claim in his amended petition in the district court, see R.2-31 at 34-35 (Second Am. Pet. ¶¶ 87-90), and the district court did not address the issue. We decline to address an issue not presented to the district court but raised for the first time on appeal. See Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991).

9

to define "reasonable doubt" allowed a finding of guilt based upon a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment.[4]  The State contends, and the district court concluded, that the Cage claim is procedurally defaulted and therefore cannot be raised in federal court.  Waldrop counters that his attack on the instruction is not defaulted because Alabama courts do not strictly and regularly apply their procedural default rules in cases such as his; thus, he argues, there are no adequate state grounds to bar federal review of his claim.  Waldrop further argues that even if the claim is procedurally defaulted, there is cause to excuse the default.

A federal court will not address a federal question on collateral review of a state conviction if a state court's denial of relief is based on adequate and independent state grounds. Harris v. Reed, 489 U.S. 255, 261, 109 S. Ct. 1038, 1042 (1989). Here, the state court has not passed upon Waldrop's challenge to the trial court's definition of reasonable doubt because he first made this challenge in his federal habeas petition.  In such a case, the federal court should itself determine whether the claim would be procedurally defaulted under state rules constituting an adequate and independent state ground for denial of relief.  See

---

[4]  In Cage, the Supreme Court ruled that a similarly-worded instruction improperly "suggest[ed] a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." Id. at 41, 111 S. Ct. at 329-30.

Teague v. Lane, 489 U.S. 288, 298-99, 109 S. Ct. 1060, 1068-69 (1989).[5]

Alabama law precludes post-conviction relief for claims which could have been but were not raised on direct appeal. **Ala. R. Crim. P.** 32.2(a)(5). Under Rule 32, this jury instruction claim should have been raised on direct appeal. Because it was not, it has been defaulted. Thompson v. State, 581 So. 2d 1216, 1218 (Ala. Crim. App. 1991), cert. denied, 502 U.S. 1030, 112 S. Ct. 868 (1992); Weeks v. State, 568 So. 2d 864, 871 (Ala. Crim. App. 1989), cert. denied, 498 U.S. 882, 111 S. Ct. 230 (1990).

Waldrop acknowledges that Alabama law requires that challenges to jury instructions be raised on direct appeal, but he argues that Alabama courts permit the assertion of claims otherwise defaulted if the claim is based upon a new rule of law that could not have been anticipated. Alabama's procedural default rule, Waldrop argues, is thus unclear, with the result that the procedural default rule is not strictly and regularly applied.

In Ex Parte Beavers, 598 So. 2d 1320, 1324-25 (Ala. 1992), the court acknowledged that a failure to object at trial may not, under Alabama law, bar a later post-conviction challenge to a jury instruction based upon a subsequent Supreme Court decision announcing a "clear break" with past precedent. In the same

---

[5] Although a federal court may dismiss a petition when it contains both exhausted and unexhausted claims, Rose v. Lundy, 455 U.S. 509, 532-33, 102 S. Ct. 1198, 1210-11 (1982), the State has not argued exhaustion. The State argues that Waldrop has no state remedy available because of his procedural default.

11

decision, however, the court rejected the argument that <u>Cage</u> was such a decision.

Waldrop cites no Alabama authority supporting his argument that Alabama does not regularly and strictly apply its rule that challenges to jury instructions must be raised on direct appeal. Moreover, Waldrop cites no cases to support his argument that exceptions to this rule under Alabama law are not strictly and regularly applied. We hold, therefore, that Waldrop's failure to challenge the reasonable doubt instruction on direct appeal is an adequate and independent state ground for denial of relief on his claim.

Waldrop also contends that the futility of challenging the instruction in state court is cause to excuse his failure to raise the issue on direct appeal. He argues that Alabama courts have approved similar jury instructions on reasonable doubt, <u>e.g.</u>, <u>Beavers</u>, 598 So. 2d at 1324-25 (stating that <u>Cage</u> was merely application of settled precedent to specific factual context), and, therefore, it would have been futile to raise this issue earlier.[6]

According to the Supreme Court, the "futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial." <u>Engle v. Isaac</u>, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573 (1982). This reasoning applies equally to

---

[6] The petitioner cites <u>Layton v. Carson</u>, 479 F.2d 1275 (5th Cir. 1973), to support this argument. However, <u>Layton</u> does not hold that futility excuses a state procedural default; rather, the opinion states that futility will excuse the failure to <u>exhaust</u> state remedies. <u>Id.</u> at 1276. <u>Layton</u> is thus inapposite; the State has not raised exhaustion as a basis for the denial of relief.

12

Waldrop's failure to raise the issue on direct appeal.  Even if it was unlikely that his claim would have been well-received in state court, Waldrop should have presented it.  See id.

Waldrop also contends that the procedural default should be excused because Cage represents a change in the law.  He argues that, due to the novelty of Cage, he could not have been expected to anticipate that the trial court's definition of reasonable doubt would be disapproved until Cage was decided in 1990.  The district court concluded that "the basic legal principles were available to [Waldrop] to assert this claim at least at the time of his 1988 Rule 20 petition."  Waldrop v. Thigpen, 857 F. Supp. at 935.[7]

We conclude that Waldrop had at his disposal the essential legal tools with which to construct his claim in time to present the claim to state court on direct appeal.  We have held that Cage was a "new rule" under Teague, 489 U.S. at 288, 109 S. Ct. at 1060, but under Teague a rule is "new" if it is not dictated by prior precedent.  On the other hand, a rule is "novel," and therefore cause for a procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued. See Dugger v. Adams, 489 U.S. 401, 409-10, 109 S. Ct. 1211, 1216-17

---

[7] The district court held that Waldrop would be barred from attacking the instruction in a new Rule 32 petition for two reasons.  First, Rule 32.2(b) (the substantive equivalent of former Rule 20) prohibits successive petitions brought on grounds which were available or could have been ascertained at the time of the first Rule 32 petition.  **Ala. R. Crim. P.** 32.2(b).

Second, Rule 32.2(c) bars a petition for relief based on a constitutional claim if the petition is filed after the two-year statute of limitations period has run.  **Ala. R. Crim. P.** 32.2(c).

(1989). As the district court noted, "[i]t is plainly possible that the legal elements of a claim can be available and reasonably recognizable without being <u>dictated</u> by prior precedent." <u>Waldrop v. Thigpen</u>, 857 F. Supp. at 934 n.42.

In fact, before Waldrop's trial, many defendants were attacking instructions which defined "reasonable doubt" in terms very similar to the instruction used in Waldrop's case. Such claims were percolating in both state and federal courts at the time of Waldrop's trial. <u>See</u>, <u>e.g.</u>, <u>United States v. Muckenstrum</u>, 515 F.2d 568, 570-71 (5th Cir.) (criticizing instruction that defined "reasonable doubt" as one that "must be substantial" and more than "a mere possible doubt"), <u>cert. denied</u>, 423 U.S. 1032, 96 S. Ct. 564 (1975); <u>Bryant v. State</u>, 348 So. 2d 1136, 1138 (Ala. Crim. App.) (rejecting attack on instruction defining "reasonable doubt" as a "real and substantial doubt"), <u>cert. denied</u> <u>sub</u> <u>nom.</u> <u>State ex rel. Attorney General</u>, 348 So. 2d 1138 (Ala. 1977); <u>Hall v. State</u>, 306 So. 2d 290, 293 (Ala. Crim. App. 1974) (same), <u>cert. denied</u>, 306 So. 2d 294 (Ala. 1975). The existence of such cases is strong evidence that a "reasonable basis" for Waldrop's attack on the reasonable-doubt instruction existed before <u>Cage</u>. <u>See</u> <u>Reed v. Ross</u>, 468 U.S. 1, 13-20, 104 S. Ct. 2901, 2909-12 (1984) (stating that novelty can excuse default if no "reasonable basis" for claim previously existed; discussing what constitutes a "reasonable basis"); <u>James v. Cain</u>, 50 F.3d 1327, 1331 (5th Cir.) (stating that novelty is less likely an excuse where other defendants have contemporaneously perceived and litigated similar issues) (citing

14

<u>Engle</u>, 456 U.S. at 134, 102 S. Ct. at 1575), <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 310 (1995). Waldrop, therefore, has not demonstrated cause for his default.

C. Involuntary confession

While held in the Talladega County jail, Waldrop confessed on September 15, 1982, and again on October 18, 1982, to participating in the robbery and murder of Donahoo. Waldrop challenges his conviction based on the admission at trial of the October 18 confession. He argues that because he was detained in the Talladega County jail without probable cause and without presentation to a judicial officer for four months, his confession was coerced and therefore obtained in violation of the Due Process Clause of the Fourteenth Amendment.[8]

On review of a habeas petition, we make an independent assessment of the voluntariness of the confession. <u>Miller v. Fenton</u>, 474 U.S. 104, 110, 106 S. Ct. 445, 449 (1985). The subsidiary and historical facts found by the state trial court, however, are presumed correct under 18 U.S.C. § 2254(d). <u>Id.</u> at 112, 106 S. Ct. at 450. When a state court fails to make explicit findings, a state court's denial of the claim "resolves all conflicts in testimony bearing on that claim against the criminal defendant." <u>Culombe v. Connecticut</u>, 367 U.S. 568, 604-05, 81 S. Ct. 1860, 1880 (1961).

---

[8] The petitioner also raised a Fifth Amendment challenge to his confession in his petition, but has not questioned on this appeal the denial of relief on this claim.

15

To determine whether a confession is voluntary, the court must assess "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973). The inquiry focuses on whether there has been any "police overreaching." Colorado v. Connelly, 479 U.S. 157, 163, 107 S. Ct. 515, 520 (1986). Factors to be considered include the "[accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Schneckloth, 412 U.S. at 226, 93 S. Ct. at 2047 (citations omitted).

The trial court held an evidentiary hearing on Waldrop's oral motion to suppress the October 18, 1982, confession.[9] In denying the motion to suppress, the court implicitly found that (1) Waldrop had been advised of and understood his Miranda rights before making his statement; (2) Waldrop asserted that he knew the rights better than the officers did; (3) he wished to talk to the authorities; (4) he asserted that he did not want or need a lawyer; (5) he never requested counsel; (6) no threats or promises were made to induce Waldrop's statement; (7) the statement had not been induced by telling Waldrop that it was necessary to prepare him for a polygraph examination; and (8) Waldrop's visiting privileges had

---

[9] The September 15, 1982, confession was not introduced at trial.

16

been suspended, not as an inducement to confess, but because weapons were found on persons attempting to visit him at the jail. Waldrop v. Thigpen, 857 F. Supp. at 894-895 (summarizing the evidence at the hearing and the implicit factual findings of the trial court).[10] The court made similar factual findings during the hearing on Waldrop's coram nobis petition. See Waldrop v. State, 523 So. 2d at 487-88.[11] The coram nobis court additionally found that (1) Waldrop was never allowed conjugal visits and thus was not told that these visits would cease until he confessed; (2) Waldrop was held in Talladega County on the Calhoun County receiving stolen property warrant; (3) this warrant was obtained because there was sufficient evidence to prove the crime at that point and not to hold petitioner while the Donahoo investigation continued; (4) the sheriff did not know that Waldrop needed to go to Calhoun County and would have returned Waldrop had he known; and (5) Waldrop never requested that he be returned to Calhoun County but preferred to remain in Talladega County. Id. After reviewing the evidence, we

---

[10] Although the district court used these facts in its assessment of Waldrop's Fifth Amendment claim, they can also be used in a voluntariness determination. During the suppression hearing, Waldrop offered contradictory evidence on these factual issues. However, the trial court's denial of the motion implicitly credits the State's evidence. See Culombe, 367 U.S. at 604-05, 81 S. Ct. at 1880.

[11] As the district court noted, Waldrop v. Thigpen, 857 F. Supp. at 895 n.11, these factual findings were made by the coram nobis court in the context of an ineffectiveness claim. However, these findings of fact are presumed correct under § 2254(d) for all claims.

17

believe that these factual findings are fairly supported by the record.[12]

Waldrop claims that his lengthy detention without a judicial presentment or counsel in a county in which no charge lay against him renders his confession involuntary. Waldrop had been held in the Talladega County jail for less than a month when he made the September statement. Although he alleges that he was interrogated ten times before making the September statement, "there is nothing in the record to indicate that any single session was exhaustingly lengthy. There is no evidence that the police used any physical force against the petitioner or that they threatened or harassed him in any way." Waldrop v. Thigpen, 857 F. Supp. at 896. Nothing suggests that Waldrop was deprived of food or sleep. He was not isolated from others, but was allowed visitors until the visitors were found with weapons.

Waldrop was held pursuant to a valid arrest warrant. He was not presented to a judicial official before he made his statements, but because he had been "arrested pursuant to a warrant issued by a [judicial official] on a showing of probable-cause[, Waldrop was] not constitutionally entitled to a separate judicial determination that there [was] probable cause to detain him pending trial." Baker v. McCollan, 443 U.S. 137, 143, 99 S. Ct. 2689, 2694 (1979).

---

[12] On appeal, Waldrop specifically challenges only the district court's factual finding that he wanted to remain in Talladega County to be near his family. We agree that the state trial court did not find this, but we find that the record fairly supports the coram nobis court's finding that Waldrop wanted to remain in Talladega County. ( See Tr., Coram Nobis Hr'g, R.2 at 273-74.)

18

Waldrop complains that the Talladega police violated Alabama law by detaining him in Talladega County. Removal to a distant prison location is a factor to be considered in a voluntariness determination. Culombe, 367 U.S. at 630, 81 S. Ct. at 1893-94. Here, the petitioner was undoubtedly removed from Calhoun County to Talladega County. However, the coram nobis court found that Waldrop wanted to be in Talladega County and never requested that he be returned to Calhoun County. Furthermore, the sheriff of Talladega County stated that he would have returned Waldrop if he had known that Waldrop was needed in Calhoun County. It is possible that the Talladega County police violated Alabama law by moving the petitioner to Talladega County; however, that question is not before us. Moreover, a violation of state law does not necessarily render a confession involuntary. Cf. Fikes v. Alabama, 352 U.S. 191, 194 n.2, 77 S. Ct. 281, 283 n.2 (1957).

Waldrop contends that detention without counsel added to the involuntariness of his confession. But the district court correctly concluded that Waldrop's right to counsel had not yet attached on the uncharged murder offense. While Waldrop was entitled to counsel during his detention for the robbery, he had been advised of his rights on several occasions and indicated that he did not want or need a lawyer.

> [T]here is no evidence which suggests that [petitioner] was unable to comprehend the Miranda warnings or the consequences of his waiver of those rights. He stated to the police that he understood the rights better than they did and his past criminal history evinces his familiarity [with] the warnings and the legal system in general.

19

*Waldrop v. Thigpen*, 857 F. Supp. at 896. There is also no evidence in the record that Waldrop suffered from diminished mental capacity, as a result of his gunshot wound or the brain surgery which followed it, that would have called into question his waiver of his *Miranda* rights. *Id.*; *see* *also* *Waldrop v. State*, 523 So. 2d at 484 (discussing deposition testimony from coram nobis proceeding of Waldrop's neurosurgeon, Dr. Zeiger, who stated that petitioner suffered no permanent disability or diminished capacity from surgery).

We acknowledge that under some circumstances a lengthy detention might induce an involuntary confession. *See* *Davis v. North Carolina*, 384 U.S. 737, 752, 86 S. Ct. 1761, 1770 (1966). But we find no coercion here. After assessing the totality of the circumstances, we conclude that the confession given by Waldrop on October 18, 1982, and later used at trial, was not involuntary.

D. Confession obtained in violation of the Sixth Amendment

Waldrop finally claims that his October confession, made without counsel present, was obtained in violation of the Sixth Amendment because his right to counsel had already attached at the time he made the statement. The district court held and the State contends that the claim is procedurally barred. We agree.

In Claim II of his first coram nobis petition, Waldrop argued that his statement had been illegally obtained in violation of his Fourth, Sixth, and Fourteenth Amendment rights. The state circuit court held that it could not review the claim because the claim had

20

been litigated on direct appeal.[13] But Waldrop abandoned this claim on his coram nobis appeal. He instead argued that his attorneys were ineffective because they did not move to suppress his confession--a statement which, Waldrop claimed, violated his Sixth Amendment right to counsel.[14]

We agree with the district court that this claim is defaulted. Waldrop abandoned it during his appeal to the Alabama Court of Criminal Appeals following the denial of his coram nobis petition. "[T]he state court that is usually the final arbiter of such [a] collateral attack[] on [a] criminal conviction[] was not afforded a fair opportunity to rule on [it]." Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1990). Waldrop's claim is thus "analogous to claims that have never been presented to a state court, and which have become procedurally barred under state rules." Id.; see **Ala. R. Crim. P.** 32.2(b) & (c). Given the posture of Waldrop's Sixth Amendment claim, the district court properly found that the claim is procedurally defaulted. See Collier, 910 F.2d at 773.

IV. CONCLUSION

We have reviewed Waldrop's ineffectiveness claim, improper prosecutorial remarks claim, and involuntary confession claim on

_____

[13] In fact, the petitioner did not raise this claim on direct appeal; he argued that his statement had been obtained in violation of his Fifth Amendment rights.

[14] In Waldrop's coram nobis brief to the Alabama Court of Criminal Appeals, Claim II is headed: "The Admission in Evidence of Appellant's Illegally Obtained Statement Violated His Constitutional Rights." However, the text of the argument does not support an independent Sixth Amendment claim.

21

the merits and find no constitutional error.  We conclude that Waldrop's attack on the trial court's reasonable-doubt instruction and his Sixth Amendment right to counsel claim are procedurally barred.  Accordingly, the district court's denial of the petition for a writ of habeas corpus is affirmed.

AFFIRMED.